IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONSTANCE S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 0059 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, about five years ago. (Administrative Record (R.) 165-67). She claimed that she became disabled as of August 1, 2013 (R. 165, 191), due to a lower back impairment, diabetes with neuropathy, hypertension, and poor vision. (R. 194). Over the ensuing three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g), and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c) on February 6, 2018. [Dkt. #7]. The case was reassigned to me about a year later on January 10, 2019. [Dkt. #22]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.**

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

Plaintiff was born on February 10, 1955, and was 58 at the time she claims he became unable to work, and 61 at the time of the ALJ's decision. (R. 25, 165, 191). She has an excellent work record, working as a cashier in large grocery stores consistently for 25 years before her alleged onset date. (R. 203, 173-79). The job entailed being on one's feet all day, as well as lifting up to 20 pounds and frequently lifting 10 pounds. (R. 204-06). When she could no longer do the work, due to her back pain – even with some accommodation from her employer (R. 39-40), she quit and took a small early pension of about $600 a month. (R. 49).

The medical record covering plaintiff's treatment in this case is of average length, nearly over 400 pages. (R. 293-670). As is generally the case, much of it is of little utility in a disability benefits proceeding. The plaintiff cites to fewer than 20 of those pages to support her claim for benefits. [Dkt. #13, at 2-5]. The Commissioner refers to about a dozen to bolster the ALJ's opinion. [Dkt. # 19]. So, a lengthy recounting of the evidence will not be necessary. Suffice it to say that an MRI in July 2015 revealed moderate disc bulging and stenosis at L4-5, and mild disc bulging and stenosis at L3-4 and L5-S1. (R. 594). Positive straight raising shows that this comes with radiculopathy. (R. 477). Clinical tests show that plaintiff has decreased sensation in her hands and feet due to diabetic neuropathy. (R. 364, 369, 370, 477). A psychologist who examined the plaintiff at the Agency's request found she suffered from a panic disorder and a "major depressive disorder, mild." (R. 483). The psychologist who reviewed the medical record for the agency found that plaintiff had a severe mental impairment. (R. 83).

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had a number of severe impairments: "obesity, diabetes mellitus, peripheral neuropathy, hypertension

and degenerative disc disease." (R. 18). The ALJ said the plaintiff's anxiety and/or depression were not severe impairments, dismissing the findings of the Agency's consultative examiner and the reviewing psychologist. (R. 19). The ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings, referring specifically to Listing 11.14 for peripheral neuropathy and 1.04 for disorders of the spine. (R. 19-20).

The ALJ determined that plaintiff could perform light work – lifting up to 20 pounds with frequent lifting of up to 10 pounds and unlimited standing and walking – with the following limitations:

> no more than occasional climbing of ladders, ropes, or scaffolds and no more than occasional stooping, crouching, or crawling. Claimant is limited from jobs that require fine distance perception . . . Claimant is not able to tolerate vibrating hand tools and not to have concentrated exposure to work place hazards (such as operating machinery, working at unprotected heights, or having concentrated exposure to unguarded hazardous machinery.

(R. 20). The ALJ then summarized the medical evidence (R. 20-24), finding that diagnoses were mild, examinations were essentially normal, and diagnostic studies were minimal. (R. 20-24).

The ALJ then found the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 23). The ALJ then addressed the medical opinion evidence. In regard to Dr. Madappallil's opinions, the ALJ gave them no weight because the doctor said the onset of plaintiff's impairments was June 2007 while plaintiff alleged disability began in 2013, limitations were not consistent with treatment notes, and

demonstrated no increase in severity (R. 23), Dr. Madappallil, an internist, did not recommend plaintiff see a specialist other than a pain specialist, and had seen plaintiff only four times since her alleged onset date. (R. 24). Recalling that the ALJ dismissed the findings of both the state agency consultative examiner and reviewing psychologist, the only medical opinion in the record the ALJ accepted was that of the state agency reviewing physician. The ALJ adopted the limitations the doctor found, stating that he was familiar with Social Security disability, reviewed the record, and provided a detailed explanation with references to the record. (R. 24).

Next, the ALJ determined that the plaintiff was able to perform her past work as a cashier/checker, which was light work requiring a great deal of standing and/or walking, and was semi-skilled. (R. 25). The ALJ then found that plaintiff was not disabled and not entitled to benefits under the Act. (R. 25).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997);

*Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

### III.

In this case, there are at least a handful of points in the ALJ's decision where there is no logical bridge from the evidence to the conclusion. We shall discuss only a few, as any one of them means that this case must be remanded to the Commissioner for further proceedings.

We begin with the ALJ's treatment of plaintiff's obesity, because it is a head-shaker and blatantly fails to meet the logical bridge requirement. The ALJ conceded that plaintiff's obesity – her BMI was consistently over 35 – was a severe impairment (R. 18), meaning it "significantly limit[s] the claimant's ability to perform basic work activities, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016). The ALJ first addressed these limitations in his discussion about whether the plaintiff had an impairment, or combination of impairments, that met or equaled a listed impairment. As it happens, the ALJ didn't say too much about it:

> The claimant's obesity does not meet or equal the criteria for any listed impairments, because there is no evidence that it significantly impairs his[sic] exertion function and non-exertion functions. Specifically, claimant does not have a major dysfunction of a joint, disorder of the spine, or any specific neurological deficits that affect his[sic] exertion and non-exertion functions. Additionally, there is no evidence that the claimant's has caused significant impairments related to the claimant's other functions, such as cardiovascular, respiratory, or digestive, that causes recurring, persistent, and uncontrollable effects on these functions.

(R. 19-20).

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). What the ALJ provided here was a pretty perfunctory analysis, with no mention of any specific listing. In that respect, it's not even as "thorough" a discussion as the one that warranted a remand in *Minnick*. Moreover, it's unclear what the ALJ was looking for in terms of a "disorder of the spine." He said plaintiff had none, yet she has bulging discs at three levels (R. 594), muscle spasm (R. 349), and radiculopathy (positive straight leg raising) (R. 477). And even the ALJ conceded she

had severe degenerative disc disease. The same can be said for the ALJ's finding that she has no neurological deficits that affect functioning. The medical record shows that she has diabetic neuropathy (R. 364, 369), paresthesia and decreased sensation in her hands and feet (R. 370, 477), and edema. (R. 550) The ALJ might have discussed why these findings don't meet whatever unmentioned listing he was looking at, but he didn't; he essentially said there were no such findings. That's clearly wrong.

Later in the Opinion, the ALJ said he "considered the effects of claimant's obesity" and "placed the postural limitations in claimant's residual functional capacity." (R. 23). Those postural limitations are "occasional climbing of ladders, ropes, or scaffolds" and "occasional stooping, crouching, or crawling." (R. 20). So, to be clear, the ALJ determined that a severely obese (R. 18), *see also Allensworth v. Colvin*, 814 F.3d 831, 833 (7th Cir. 2016), 61-year old woman with three bulging discs, radiculopathy, and loss of sensation in her hands and feet could climb ropes for up to two hours every day. She could also stoop, crouch, or crawling for up to two hours of every day. *See Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018)(occasional means up to two hours of every workday). This is where the real head-shaking starts.

Such RFC findings are all too frequent, and they are mind-boggling. They defy common sense. *See, e.g., Joanne F. v. Berryhill*, 370 F. Supp. 3d 935, 940 (N.D. Ill. 2019); *Rivera v. Berryhill*, 2018 WL 319317, at *2 (N.D. Ill. Jan. 8, 2018). The Seventh Circuit has called them worse. It has said they are fanciful. *Browning v. Colvin*, 766 F.3d 702, 706 (7th Cir. 2014). It has also made this withering comment:

> If we thought the Social Security Administration and its lawyers had a sense of humor, we would think it a joke for its lawyer to have said in its brief that the administrative law judge "accommodated [the plaintiff's] obesity by providing that

7

> she could never [be required as part of her work duties to] climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs, balance, kneel, crawl, stoop, and/or crouch." (The administrative law judge must have forgotten that the primary consulting physician thought the plaintiff can crawl and crouch at work.) Does the SSA think that if only the plaintiff were thin, she could climb ropes? And that at her present weight and with her present symptoms she can, even occasionally, crawl, stoop, and crouch?

*Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir. 2014). Beyond that, one also has to wonder if a 61-year-old woman with three bulging discs, radiculopathy, and loss of sensation in her feet is "unlimited" as the ALJ put it (R. 20, 56) in her ability to stand and walk all day, every day. Clearly, there is a logical bridge problem here that requires a remand. *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016).

It's not logical to say the plaintiff can climb ropes for up to two hours every day, but there's an elephant in the room. At plaintiff's age, if the ALJ had found she were limited to sedentary work – a far easier conclusion to buy – she would be unable to perform her past work, which was light, and would be disabled under the Medical-Vocational Guidelines unless other work requires "very little, if any, vocational adjustment." 20 CFR Pt. 404, Subpt. P, App. 2, Sec. 201.00(f). Even if plaintiff were limited to light work but could not perform her past work due to, perhaps, an inability to stand all day, the same issue would arise. 20 C.F.R. Subpart P, App. 2, Sec. 202.00(f). If we're going to worry about vocational adjustment at an advanced age, it seems like we should worry at least a little bit about climbing ropes and scaffolds, or stooping crouching and crawling.

As already noted, that's enough to merit a remand, but it's worthwhile to make a couple of other points. The ALJ readily dismissed the findings from the Agency's consultative examining psychologist and reviewing psychologist that the plaintiff had a severe psychological impairment. ALJs have to offer good reasons for the weight they accord, or don't accord, to medical opinions.

8

*See, e.g., Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018)(treating physician); *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)(consultative examiner); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010)(reviewing doctor). In the main, he did so because the plaintiff had no record of treatment for psychological disorders and no record of having been hospitalized. (R. 19). But, as to the former rationale, the ALJ failed to inquire into why plaintiff had no such treatment history. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). As to the latter, the Seventh Circuit has said that this kind of rational is "deeply flawed." *See Williams v. Colvin*, 757 F.3d 610, 614 (7th Cir. 2014).

Additionally, given the ALJ's rejection of the reviewing psychologist's opinion, it is certainly odd that the ALJ adopted the reviewing physician's opinion on plaintiff's physical condition because "he is familiar with Social Security policy and Regulations, he reviewed the documentary record, and he provided a detailed explanation with references to the evidence to support his opinion." (R. 24). The reviewing psychologist, of course, is just as familiar with policy and regulations, also reviewed the documentary record, and his analysis (R. 82) is arguably more detailed and more thoroughly supported with citation to the record than the other reviewing doctor's physical capacity assessment. (R. 85-86). The ALJ's reasoning here makes no sense.

Along these same lines, the ALJ absurdly rejected the opinion from plaintiff's treating physician because he is an internist. (R. 24). But the agency's reviewing physician – again the source of the only opinion the ALJ accepted – is a general practitioner. (R. 91). Clearly, there was an unexplained double standard at work here. And, again, the reasoning makes no sense. The ALJ also faulted the treating physician for having only seen plaintiff four times since her alleged onset date (R. 24). The Agency's reviewing physician, of course, had never seen the plaintiff. While

9

seeing a patient twice a year might be a reason to not accord a treating physician's opinion controlling weight, it can hardly be a persuasive reason to accord it *no* weight, especially when the opinion of someone who, again, *never* saw the plaintiff is given controlling weight. *See, e.g., Plessinger v. Berryhill*, 900 F.3d 909, 914 (7th Cir. 2018); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) ("A treating physician's opinion trumps the conclusions of agency consultants—in particular those who never examined the claimant—unless the limitations articulated by the treating physician are not supported by the record."). And, in what may make the least sense of all, in one breath the ALJ says the treating physician's opinion is due no weight because he didn't refer plaintiff to a specialist; in the next, the ALJ admits the doctor referred plaintiff to a specialist. (R. 24).

**CONCLUSION**

For the foregoing reasons, the plaintiff's motion for summary judgment [12] is granted, and this case is remanded to the Commissioner for further proceedings.[2]

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/8/19

---

[2] Plaintiff asks that the ALJ's decision be reversed and an award of benefits ordered. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011). As that is not the case here, where the remand is due to the Seventh Circuit's logical bridge requirement, an award of benefits is not appropriate without further administrative proceedings.

10